UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Derry & Webster, LLC</u>

     **v.**                              Civil No. 14-cv-211-PB
                                         Opinion No. 2014 DNH 264
<u>Bayview Loan Servicing, LLC</u>


<u>MEMORANDUM AND ORDER</u>


     Derry & Webster, LLC has sued Bayview Loan Servicing, LLC
to recover damages it suffered as a result of a foreclosure
sale.  Bayview has responded with a motion to dismiss for
failure to state a claim.  For the reasons that follow, I grant
Bayview's motion in part and deny it in part.


                    I.   <u>BACKGROUND</u>[1]

     In September 2007, Derry & Webster granted two mortgages on

---

[1] I draw the background facts from Derry & Webster's amended
complaint, taking its factual allegations as true and drawing
all reasonable inferences in the light most favorable to Derry &
Webster.  Where necessary, I also draw facts from public records
and from certain documents that Derry & Webster attached to its
original complaint but not to its amended complaint, even though
it expressly referred to them in the amended complaint.  See
Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (in deciding a
motion to dismiss, a court may consider "official public
records" and "documents sufficiently referred to in the
complaint").

property it owned in Hudson, New Hampshire to Silver Hill Financial, LLC as security for loans totaling $1,062,000. Silver Hill Financial later assigned the loans and mortgages to Bayview.  Derry & Webster defaulted on the loans, and Bayview scheduled a foreclosure sale for October 3, 2013.  Derry & Webster responded by filing for bankruptcy protection, causing the scheduled foreclosure sale to be cancelled.

In late 2013, Derry & Webster began to discuss a possible short sale with Bayview.  At an unspecified point prior to November 6, 2013, Bayview informed Derry & Webster that it would accept a short sale for $600,000.  On November 6, 2013, Derry & Webster entered into an agreement with Artivan Sookisian, a third-party buyer, to sell the property to Sookisian for $600,000.  Doc. No. 1-1 at 7-11.  On December 27, 2013, Bayview sent a "discount payoff letter" to Derry & Webster approving a short sale that would yield $600,000 to Bayview and, in turn, release Derry & Webster and its principals from further obligations under the original loans.  The parties scheduled a closing to take place on February 26, 2014, but the closing did not ultimately take place.

On March 3, 2014, Bayview, through its attorney, William Amann, petitioned the bankruptcy court for relief from the

automatic stay as a secured creditor of Derry & Webster.  See
Br. Doc. No. 52.[2]  In its motion, Bayview stated that "[Derry &
Webster] has no means to reinstate the loan.  Instead, [Derry &
Webster] has proposed a short-sale outside of bankruptcy, which
[Bayview] is willing to accept, however, relief from the
automatic stay must be obtained first."  Id. at 2.

    At around this time, Bayview informed Derry & Webster that
it would accept a short sale of $568,000 if Derry & Webster
assented to its motion to lift the automatic stay.  On March 11,
2014, in response to Bayview's representations, Derry & Webster
assented to Bayview's motion.  See Br. Doc. No. 54.  The
bankruptcy court entered an order granting the motion on March
19 and stayed the order until April 2.  See Br. Doc. No. 55.

    Also on March 19, Amann sent an email to Allen and Morgan
Hollis, an attorney representing Sookisian's lender.  In that
email, Amann wrote that "as long as [Bayview] nets $568,000
they're good."  Doc. No. 4-2 at 29.  He also requested further
documents from Hollis that were needed to complete the short
sale.  See id.  By April 2, 2014, both Derry & Webster and

---

[2] The case number of the related bankruptcy proceeding in the
U.S. Bankruptcy Court for this District is 13-12432-BAH.  In
this Memorandum and Order, "Br. Doc. No." citations refer to
docket numbers for that case.

Sookisian had done everything required to complete the short sale.  They awaited only a letter from Bayview confirming its approval, which Amann had previously indicated they could expect to receive no later than April 1.

The bankruptcy court's order lifting the automatic stay became effective on April 2, 2014.  Br. Doc. No. 55.  On April 3, Amann informed Derry & Webster that Bayview would not accept a short sale unless it yielded $600,000.  Although Derry & Webster's representatives believed that Bayview was obligated to accept a $568,000 short sale, they continued to negotiate with Bayview in an effort to conclude the transaction.

On April 14, 2014, Bayview served notice on Derry & Webster that it had scheduled a foreclosure sale of the Hudson property for May 13, 2014.  On May 7, 2014, Derry & Webster petitioned the Hillsborough County Superior Court to enjoin the foreclosure.  Doc. No. 4-1 at 4.  The court granted a temporary injunction that day and scheduled a hearing on the merits to take place ten days later, on May 17, 2014.  Id. at 52.  On May 13, 2014, however, Bayview removed the case to this Court.  Doc. No. 1.  Because Bayview did not seek additional interim relief, the state court temporary injunction expired on May 17, 2014. Bayview ultimately conducted a foreclosure sale of the Hudson

4

property on June 12, 2014.

On July 11, 2014, Derry & Webster filed an amended complaint seeking damages and an order declaring that it has satisfied its legal obligations to Bayview.  See Doc. No. 12.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id.  In deciding a motion to dismiss, I employ a two-step approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  First, I screen the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action."  Id. (citations, internal quotation marks, and alterations omitted).  A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed.  Id.  Second, I credit

5

as true all non-conclusory factual allegations and the
reasonable inferences drawn from those allegations, and then
determine if the claim is plausible.  Id.  The plausibility
requirement "simply calls for enough fact to raise a reasonable
expectation that discovery will reveal evidence" of illegal
conduct.  Twombly, 550 U.S. at 556.  The "make-or-break
standard" is that those allegations and inferences, taken as
true, "must state a plausible, not a merely conceivable, case
for relief."  Sepúlveda–Villarini v. Dep't of Educ., 628 F.3d
25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555 ("Factual
allegations must be enough to raise a right to relief above the
speculative level . . . .").

## III.  DISCUSSION

Derry & Webster's amended complaint presents seven claims:
(i) breach of contract; (ii) breach of the implied covenant of
good faith and fair dealing; (iii) breach of the New Hampshire
Consumer Protection Act; (iv) intentional misrepresentation; (v)
negligent misrepresentation; (vi) promissory estoppel; and (vii)
equitable estoppel.[3]  See Doc. No. 12.  I address Bayview's

---

[3] Without addressing the choice-of-law issue, "[t]he parties
briefed and argued the case on the apparent understanding that

challenge to each claim in turn.

**A.    Count 1: Breach of Contract**

Derry & Webster alleges that Bayview offered to accept a short sale of $568,000 in exchange for Derry & Webster's assent to its motion to lift the automatic stay.  See Doc. No. 12 at 6. It claims that it then accepted Bayview's offer and fulfilled its own obligations under the ensuing contract by assenting to Bayview's motion.  See id.  It asserts that Bayview then breached the contract by refusing to accept the $568,000 short sale and ultimately foreclosing on the Hudson property.  See id.

Bayview responds by claiming that a contract was not formed because Bayview never accepted Derry & Webster's offer and, in any event, Derry & Webster's assent to Bayview's motion did not provide adequate consideration for the alleged contract.  See Doc. No. 18-1 at 4-5.

Bayview's first argument is a nonstarter because it is based on a misreading of the amended complaint, which alleges that Bayview, not Derry & Webster, made the initial offer to accept a $568,000 short sale.  Because the complaint alleges

---

[New Hampshire] law governs" Derry & Webster's claims.  See In re Newport Plaza Assocs., 985 F.2d 640, 643-44 (1st Cir. 1993). Therefore, I need not reach the choice-of-law question and instead proceed on the parties' assumption that New Hampshire law controls here.  See id.

that Derry & Webster accepted Bayview's offer, Bayview's

argument that it never accepted Derry & Webster's offer is

immaterial to the validity of the contract claim.[4]

Bayview's alternative argument that the alleged contract

fails for want of consideration is also unavailing.

"Consideration is present if there is either a benefit to the

promisor or a detriment to the promisee." Chisholm v. Ultima

Nashua Indus. Corp., 150 N.H. 141, 145 (2003).  Here, it is

clear, and the parties do not dispute, that Derry & Webster had

a legal right to resist Bayview's motion to lift the automatic

stay.[5]  Whether or not Derry & Webster would have ultimately

---

[4] Bayview points to Derry & Webster's allegation in its complaint
that "the only remaining item necessary to close the 'short-
sale' transaction was a letter from the Defendant confirming the
approval for the 'short-sale.'"  Doc. No. 18-1 at 4.  In
context, however, the complaint alleges that a letter was needed
from Bayview to complete the short sale after the alleged
contract had been formed.  See Doc. No. 12 at 4.  Under this
sequence of alleged facts, Bayview's failure to provide the
letter would evince a breach of contract, not an absence of
offer and acceptance.

[5] 11 U.S.C. § 362(d) prescribes the ability of parties in
interest to seek relief from the automatic stay under certain
circumstances.  See 11 U.S.C. § 362(d).  Rule 4001(a) of the
Federal Rules of Bankruptcy Procedure governs motions brought
under § 362(d) to lift the automatic stay and provides that such
motions must "be made in accordance with Rule 9014" of the
Rules.  Fed. R. Bankr. P. 4001(a).  Rule 9014, in turn, requires
that whenever relief is requested by motion in any contested
manner, "reasonable notice and opportunity for hearing shall be

prevailed, its agreement to abandon that right benefited Bayview
by, if nothing else, relieving it of the need to further
litigate the issue.  Moreover, by surrendering its right to
resist, Derry & Webster forfeited any chance, however remote, of
keeping the automatic stay in place and thereby precluding or
delaying foreclosure of the property.  Derry & Webster's assent
to Bayview's motion, therefore, provided adequate consideration
for Bayview's alleged promise.  This result should come as no
surprise because New Hampshire law follows the ordinary and
long-established principle that forbearance of a legal right or
claim provides consideration sufficient to form a contract.  See
Latulippe v. New England Inv. Co., 77 N.H. 31, 86 A. 361, 362
(N.H. 1913); 3 Williston and Lord, Williston on Contracts § 7:47
(4th ed.).

        This general rule notwithstanding, Bayview argues that
forbearance of a legal right provides consideration only if the
surrendered claim is meritorious.  New Hampshire law, however,
has squarely rejected Bayview's argument.  See Carter v. Provo,
87 N.H. 369, 180 A. 258, 259 (N.H. 1935) ("[T]he fact that [a
claim] may have deserved disallowance or probably would not have

_____

afforded the party against whom relief is sought."  Fed. R.
Bankr. P. 9014(a).

been sustained does not show that its forbearance constituted an insufficient consideration."); Flannagan v. Kilcome, 58 N.H. 443, 444 (1878) ("A settlement of a controversy is valid, not because it is the settlement of a valid claim, but because it is the settlement of a controversy."); Pitkin v. Noyes, 48 N.H. 294, 304 (1869) ("[T]he compromise of doubtful and conflicting claims is a good and sufficient consideration to uphold an agreement."); see also Restatement (Second) of Contracts § 74 (1981).  Thus, Bayview cannot attack the adequacy of the consideration that Derry & Webster claims to have provided simply by arguing that Derry & Webster would not have prevailed had it opposed Bayview's motion.[6]  Accordingly, I reject Bayview's motion to dismiss Derry & Webster's breach of contract claim.

---

[6] It is true that "the surrender or discharge of a claim which is utterly without foundation and known to be so, is not a good consideration for a promise." Pitkin, 48 N.H. at 304 (emphasis added); see also Restatement (Second) of Contracts § 74 (adopting same two-pronged approach).  Bayview, however, has argued only that it would have prevailed on its motion to lift the automatic stay regardless of Derry & Webster's decision to assent.  It is doubtful whether that argument, even if true, suffices to show that Derry & Webster's claim was "utterly without foundation."  See Pitkin, 48 N.H. at 304.  In any event, Bayview would also have to show that Derry & Webster knew that its claim was "utterly without foundation" to defeat the consideration that Derry & Webster claims to have furnished.  See id.  Bayview, however, has neither identified this standard nor made an argument that addresses it.

**B.   Count 2: Breach of the Implied Covenant of Good Faith and Fair Dealing**

Derry & Webster's second count alleges that Bayview breached the implied covenant of good faith and fair dealing. See Doc. No. 12 at 6.  In New Hampshire, the implied covenant of good faith and fair dealing comprises three separate categories of obligation, each of which relates to a distinct type of contract-related conduct: contract formation; the termination of at-will employment; and the exercise of discretion in contract performance.  Livingston v. 18 Mile Point Drive, Ltd., 158 N.H. 619, 624 (2009).  Derry & Webster claims that Bayview breached both the formation and discretion prongs of the good-faith covenant.  See Doc. No. 12 at 7.

Derry & Webster first alleges that Bayview misrepresented a material fact in connection with the formation of the contract by offering to accept a short sale of $568,000 when it was in fact unwilling to do so.  See id. at 7.  That misrepresentation, Derry & Webster further alleges, induced it to change its position by assenting to Bayview's motion.  See id.  As pled, these facts are sufficient to support a good faith and fair dealing claim.  See Bursey v. Clement, 118 N.H. 412, 414-15 (1978) (misrepresentation of a material fact that induces a

11

change in position creates liability for breach of the duty of good-faith dealing).  In any event, Bayview does not even address the duty of good faith in contract formation in its motion.  See Doc. No. 18-1 at 6-7.  Thus, I conclude that Derry & Webster has stated a claim for breach of the good-faith covenant under the formation prong of that doctrine.

Derry & Webster also alleges that Bayview breached its duty of good faith by "exercise[ing] its discretion to commence foreclosure proceedings" instead of completing the $568,000 short sale transaction.  See Doc. No. 12 at 8.  Bayview argues that this claim fails because the contract underlying Derry & Webster's claim did not extend any discretion to Bayview in performing its obligations.  See Doc. No. 18-1 at 7.

It is true, as Derry & Webster observes, that a grant of discretion in performance need not be explicit to support a good faith and fair dealing claim.  See Great Lakes Aircraft Co. v. City of Claremont, 135 N.H. 270, 293 (1992).  Thus, the fact that the contract alleged by the complaint makes no express grant of discretion to Bayview is not dispositive of Derry & Webster's claim.  Nevertheless, a claim that a defendant is liable for failing to exercise contractual discretion in good faith must still identify a specific grant of discretion

"sufficient to deprive another party of a substantial proportion of the agreement's value" that the contract extends, explicitly or implicitly, to the breaching party.  See Centronics Corp. v. Genicom Corp., 132 N.H. 133, 143 (1989).  Merely alleging a breach of contract without also identifying a specific grant of discretion that the breaching party abused, however, does not satisfy this requirement.  See Balsamo v. Univ. Sys. of N.H., 2011 DNH 150, 12; Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 2001 DNH 142, 8; Lowry v. Cabletron Sys., 973 F. Supp. 77, 84 (D.N.H. 1997).  Otherwise, every breach of contract claim would double as a claim for breach of the duty of good-faith dealing, eliminating the boundary between the two doctrines.  See Hall v. EarthLink Network, Inc., 396 F.3d 500, 508 (2d Cir. 2005).

Here, Derry & Webster argues only that Bayview improperly exercised its contractual discretion by commencing foreclosure proceedings.  See Doc. No. 20-1 at 8.  It neither identifies a specific grant of discretion that the alleged contract extends to Bayview nor explains how Bayview abused that discretion beyond simply failing to perform its express duty under the contract.  Thus, Derry & Webster alleges nothing more than an ordinary breach of contract that cannot support a separate good faith and fair dealing claim.

C.  **Count 3: New Hampshire Consumer Protection Act**

Derry & Webster's third count alleges that Bayview violated the New Hampshire Consumer Protection Act (the "CPA") by knowingly misrepresenting its willingness to accept a $568,000 short sale, thereby inducing Derry & Webster to assent to its motion.  See Doc. No. 12 at 9-10.  Bayview responds by arguing that the conduct alleged by Derry & Webster is not actionable under the CPA.  See Doc. No. 18-1 at 8.

The CPA broadly proscribes "any unfair or deceptive act or practice in the conduct of any trade or commerce within this state" and enumerates a non-exhaustive list of such "deceptive act[s] or practice[s]."  N.H. Rev. Stat. Ann. § 358-A:2.  To determine whether the statute prohibits a non-enumerated act or practice, courts apply what the New Hampshire Supreme Court has called the "rascality test."  Axenics, Inc. v. Turner Constr. Co., 164 N.H. 659, 675 (2013).  To be actionable under the rascality test, the challenged conduct "must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce."  Id. at 675-76 (internal quotation omitted).

An ordinary breach of contract does not generally meet the rascality test and, therefore, does not usually impose liability

14

under the CPA.  George v. Al Hoyt & Sons, Inc., 162 N.H. 123, 129 (2011).  Derry & Webster, however, alleges not only that Bayview breached the contract, but that it knowingly induced Derry & Webster to assent to its motion by misrepresenting its willingness to accept a short sale.  See Doc. No. 12 at 8-9.  The New Hampshire Supreme Court has consistently held that inducing another to enter a contract based on a knowing misrepresentation of the promisor's intent to perform under the contract violates the CPA.  See, e.g., George, 162 N.H. at 129-30 (defendant who took money to build bridge, but never gave that money to the bridge builder, was liable under CPA); State v. Sideris, 157 N.H. 258, 262 (2008) (knowingly entering into a contract with no intention of performing incurs liability under CPA); Milford Lumber Co. v. RCB Realty, Inc., 147 N.H. 15, 19 (2001) (defendants who made intentionally vague statements that they were authorized to use another's account, and then, when payment was called for, attempted to disclaim obligation were liable under CPA).  Derry & Webster, therefore, has stated a claim for relief under the CPA.

**D.**  **Counts 4 and 5: Intentional and Negligent Misrepresentation**

     Counts 4 and 5 allege that Bayview is liable for intentional and negligent misrepresentation.  See Doc. No. 12 at

9.  In Count 4, Derry & Webster alleges that Bayview is liable for fraud because it knowingly misrepresented its willingness to accept a $568,000 short sale with the intention that Derry & Webster would rely on that misrepresentation by assenting to Bayview's motion.  See id.  Reprising a familiar theme, Bayview responds by again arguing that the bankruptcy court would have lifted the automatic stay with or without Derry & Webster's assent.  See Doc. No. 18-1 at 9.  For that reason, Bayview concludes, Derry & Webster "did not rely" on Bayview's alleged representation of its willingness to accept a $568,000 short sale and, consequently, cannot bring a claim of fraud against it.  See id.

As an initial matter, Bayview's argument, which flatly asserts that Derry & Webster did not rely on its stated willingness to accept a $568,000 short sale, amounts only to a challenge to the accuracy of the complaint's factual allegations.  That, of course, is an argument that Bayview is not entitled to make in a motion to dismiss.  See Air Sunshine, Inc. v. Carl, 663 F.3d 27, 33 (1st Cir. 2011) (in deciding a motion to dismiss, a federal court must accept as true all allegations made in the complaint).  In any event, and for much the same reason that I used in rejecting Bayview's challenge to

the contract claim, the underlying merits of Bayview's and Derry & Webster's competing claims regarding the automatic stay are irrelevant.  The complaint alleges that Derry & Webster surrendered its legal right to resist Bayview's motion to lift the automatic stay from the Hudson property, which it was not obligated to do, and that it did so in reliance on Bayview's intentional misrepresentation of its willingness to accept a short sale.  Those facts, as alleged, are sufficient to state a claim for fraud.  See Patch v. Arsenault, 139 N.H. 313, 319 (1995) ("The tort of intentional misrepresentation, or fraud, must be proved by showing that the representation was made with knowledge of its falsity or with conscious indifference to its truth and with the intention of causing another person to rely on the representation.").  Aside from its impermissible argument attacking Derry & Webster's factual allegations, Bayview has provided no other reason to dismiss Derry & Webster's fraud claim.  Accordingly, I reject Bayview's argument for dismissal of Count 4.

Count 5, however, which alleges negligent rather than intentional misrepresentation, fails for a different reason: it is necessarily duplicative of Derry & Webster's fraud claim. Bayview's representation of its willingness to accept a short

sale — the basis for Derry & Webster's negligent
misrepresentation claim — is a statement of intention.
Statements of intention are actionable only if they are false
when made.  See GE Mobile Water, Inc. v. Red Desert Reclamation,
LLC, 6 F. Supp. 3d 195, 201 (D.N.H. 2014).  In other words, a
party that honestly states its intention to do something, and
only later decides not to do it, is not liable for the tort of
misrepresentation.  See Thompson v. H.W.G. Group, Inc., 139 N.H.
698, 700-01 (1995) (citing Hydraform Prods. Corp. v. Am. Steel &
Aluminum Corp., 127 N.H. 187, 200 (1985)).  Thus, Bayview's
statement that it would accept a $568,000 short sale would be
actionable only if Bayview had no intention of doing so when it
made the statement to Derry & Webster.  See id.  If Bayview did
not intend to accept a $568,000 short sale when it made the
statement, however, then Bayview necessarily knew that the
statement was false when it was made.  A knowing or intentional
misrepresentation is fraud, which Derry & Webster has adequately
pled, not negligent misrepresentation.  See 200 North Gilmor,
LLC v. Capital One, Nat'l Ass'n, 863 F. Supp. 2d 480, 493 (D.
Md. 2012).  Under the facts that Derry & Webster has alleged,
therefore, there is no circumstance in which Bayview could be
liable for negligent misrepresentation and not for fraud.

18

Accordingly, I dismiss Derry & Webster's negligent
misrepresentation claim.

**E.   Counts 6 and 7: Promissory and Equitable Estoppel**

Counts 6 and 7 allege liability for both promissory and
equitable estoppel.  Derry & Webster claims that it reasonably
relied on Bayview's representation of its willingness to accept
a $568,000 short sale in exchange for Derry & Webster's assent
to its motion to lift the automatic stay.  See Doc. No. 12 at
10-11.  Bayview responds by once again arguing that it "was
entitled to relief from stay against the [Hudson property] with
or without [Derry & Webster's] assent."  Doc. No. 18-1 at 11.
For that reason, Bayview contends, Derry & Webster could not
have relied on its promise to accept a short sale.  See id.

Under the equitable doctrine of promissory estoppel, "a
promise reasonably understood as intended to induce action is
enforceable by one who relies upon it to his detriment or to the
benefit of the promisor."  Panto, 130 N.H. at 738 (citing
Restatement (Second) of Contracts § 90).  As I have already
explained, Derry & Webster's assent to Bayview's motion, as
alleged, benefited Bayview at least by removing the need to
further litigate its request to lift the automatic stay from the
Hudson property.  The complaint alleges that Derry & Webster

provided this assent in reliance on Bayview's promise to accept
a $568,000 short sale as settlement of its debt.  Those facts,
as alleged, state a claim for promissory estoppel, and the
ultimate merits of Bayview's motion to lift the automatic stay
are irrelevant.[7]  Bayview has pointed to no other reason that
warrants dismissal of the promissory estoppel claim.  Thus, I
reject Bayview's motion to dismiss Count 6.[8]

Count 7, however, which alleges equitable estoppel, is
duplicative of the promissory estoppel claim.  As Derry &
Webster itself observes, the doctrine of equitable estoppel, as
opposed to promissory estoppel, "does not involve a promise.
Rather, it serves to forbid one to speak against his own act,

---

[7] Ordinarily, "promissory estoppel is not available [in New
Hampshire] in the case of an express, enforceable agreement
between the parties covering the same subject-matter." Rockwood
v. SKF USA, Inc., 758 F. Supp. 2d 44, 58 (D.N.H. 2010).  As this
litigation progresses, therefore, the promissory estoppel claim
may prove extraneous if it is determined that Derry & Webster
and Bayview formed a binding and enforceable contract.  At this
point, however, the complaint adequately pleads both causes of
action, and it would be premature to consider dismissal of
either claim on this basis.

[8] Citing no cases to support its position, Bayview also argues
for dismissal of the promissory estoppel claim because, it
contends, Derry & Webster has suffered no injustice that
requires the alleged promise's enforcement.  See Doc. No. 18-1
at 11 n. 1.  To the extent that I can understand Bayview's
argument, I reject it as an appeal to facts outside the
complaint, which, as I have said, Bayview is not entitled to
make in a motion to dismiss.

representations, or commitments to the injury of one to whom they were directed and who reasonably relied thereon." Great Lakes Aircraft Co., 135 N.H. at 290.  Here, the same alleged representation underlies both of Derry & Webster's estoppel claims: namely, that Bayview would accept a $568,000 short sale. That representation is a promise that suffices for Derry & Webster's promissory estoppel claim, but it cannot double as a statement of fact that would also support an equitable estoppel claim.  Otherwise, every claim of promissory estoppel would also entail a claim of equitable estoppel, dissolving the distinction between the two doctrines.  The complaint points to no other representation of fact that could support an equitable estoppel claim.  Thus, I dismiss Count 7 as duplicative of Count 6.

## IV.  CONCLUSION

For these reasons, I grant Bayview's motion to dismiss (Doc. No. 18) as to Counts 5 and 7 of the amended complaint (Doc. No. 12) and deny the motion as to the remaining counts.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

December 29, 2014

21

cc:   Paul J. Alfano, Esq.
      Tyna M. Butka, Esq.
      Richard C. Demerle, Esq.
      John F. Hayes, Esq.
      Robert L. O'Brien, Esq.
      Gerald R. Prunier, Esq.